**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**LISA A. MOSER**
Valparaiso, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**JULIA A. CARTER**
DCS, Porter County
Valparaiso, Indiana



FILED

Sep 05 2012, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: Z.B., G.B., K.B. & S.B., | ) ) ) ) |
| and | ) ) |
| T.S. (Mother), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )   No.  64A03-1201-JT-31 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Edward Nemeth, Magistrate
The Honorable Mary Harper, Judge
Cause Nos. 64C01-1104-JT-349
64C01-1104-JT-350
64C01-1104-JT-351
64C01-1104-JT-352

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

The trial court terminated the parental rights of T.S. ("Mother") to her four children, Z.B., G.B., K.B., and S.B. (the "Children"), whose ages range from eight to fourteen. For our review, Mother raises the sole issue of whether sufficient evidence supported the termination of her parental rights. Concluding the evidence was sufficient, we affirm.

Facts and Procedural History

Mother was arrested and charged with disorderly conduct, intimidation, resisting law enforcement, battery to law enforcement, and criminal trespass in February 2009. A few days later, the Department of Child Services ("DCS") was notified by the Madison Center in Portage, Indiana, that G.B. was in the facility and presented a danger to himself and others and needed to be hospitalized. DCS initiated a children in need of services ("CHINS") proceeding, detained all of the Children, and placed them in foster care. After a detention hearing, the trial court ordered the Children to remain in foster care and granted Mother supervised visitation upon release from incarceration. The trial court found the removal of the Children was necessary because of continued domestic violence, Mother's arrest, the

Children's father's ("Father") arrest for battering Mother, and an overall unsuitable environment for the Children. The Children were adjudicated to be CHINS. After a dispositional hearing, the trial court adopted the recommendation of a family case manager to have Mother participate in services once released from custody with a permanency plan of reunification, but that if Mother did not show great progress in six months, the permanency plan should be changed to termination of parental rights and adoption.

In September 2010, Mother was released from prison and began participating in parenting and counseling services, pursuant to trial court orders. In April 2011, after becoming dissatisfied with Mother's progress and efforts to satisfy the trial court's orders, DCS filed a verified petition for the termination of Mother's relationships with the Children.[1] After several hearings, the trial court terminated Mother's parental rights in an order that included the following findings of fact and conclusions of law:

FINDINGS OF FACT

* * *

6. . . . [T]he Court accepted the Voluntary Relinquishment of Parental Rights form executed by [Father] and terminated the parent-child relationship between [Father] and [the Children]. . . .

7. The Court finds that the family had prior involvement with IDCS due to substance abuse and domestic violence.

* * *

9. The Court finds that [Z.B.] and [G.B.] were previously adjudicated as CHINS . . . due to [G.B.] being born positive for cocaine.

10. The Court finds that CHINS cases involving all four children were initiated . . . [and] closed in 2008 because the permanency plan of reunification with the parents was achieved. The reasons for the Court's involvement were that both parents had a history of domestic violence, substance abuse and other criminal conduct. The [C]hildren were returned to the parents for only six (6) months prior to their current removal from the custody of the parents and subsequent adjudication of CHINS.

---

[1] Father voluntarily relinquished his parental rights, and he is not a party to this appeal.

* * *

14. The [C]hildren were adjudicated CHINS at a Fact Finding hearing held on March 30, 2009, wherein [M]other admitted to the following allegations as orally amended in Open Court: 6(1) the father was arrested for domestic battery . . . and [M]other was arrested and incarcerated on February 25, 2009, charged with Disorderly Conduct, Intimidation, Resisting Law Enforcement, Battery to Law Enforcement and Criminal Trespass; 6(2) the recurrence of domestic violence jeopardizes the [C]hildren who were previously placed in extended foster care following their adjudications of CHINS. The mother had been incarcerated at the time of the [C]hildren's removal and remained incarcerated at the time of the Fact Finding hearing.

* * *

20. Upon [M]other's release from incarceration . . . [M]other completed a Rapid Assessment . . . . The Rapid Assessment recommended individual therapy and co-parenting to address the issues of domestic violence and substance abuse.

* * *

22. The Court finds [Family Case Manager] attempted to administer drug screens randomly to [M]other . . . . Mother submitted to one drug screen in October that was negative; one in November that was positive for Opiates, for which she had a prescription for Vicodin and another in November in which [M]other "dumped" the urine sample before it could be screened. During the month of January, [M]other failed to appear twice when requested to submit to random screens and refused to submit to a third request. Per the IDCS policy, a no-show for a drug screen or a refusal to submit to a drug screen are deemed failures. [Family Case Manager] then made a referral to HDI to provide random drug screens to [M]other. Mother refused to cooperate with all attempts made by HDI to conduct random drug screens. HDI made eight (8) different attempts to conduct random drug screens during the months of March and April of 2011. Mother failed to comply with any of these requests.

23. The Court finds [Family Case Manager] also made a referral to HDI to conduct a Substance Abuse Evaluation of [M]other. Three (3) different evaluators from HDI each made several attempts in succession from December 2010 through February 2011 to schedule a date and time for the evaluation with [M]other. All of the evaluators reported [M]other refused to cooperate with them and that they were unable to conduct the evaluation due to her refusal to cooperate or communicate with them.

24. The Court finds a referral was also made to HDI by [Family Case Manager] for individual counseling for [M]other to address issues of domestic violence and substance abuse. While [M]other did attend some sessions, her attendance was sporadic. She attended roughly 47% of the sessions. Out of 21 scheduled sessions, [M]other cancelled 7 and "no showed" for 2. Mother

4

failed to make progress in the sessions. During one of the in-home sessions, the [Father] was present and an argument ensued between [M]other and [F]ather. During the incident the counselor attempted to redirect [M]other but was unable to do so. The argument escalated to the point that police were called to the residence and [M]other was determined to be the aggressor.

25. The Court finds that [M]other was not consistent with visitations, and did not comply with her Court Ordered services. The Court finds that [M]other did not comply with the requested drug screenings, threatened the service providers, ignored the service providers' attempts to contact her to schedule services and cancelled sessions with her therapist.

* * *

27. The Court finds that [M]other and [F]ather did not improve or remediate the circumstances that endanger the [C]hildren's safety and well-being.

28. Mother scheduled a marriage to a man she had recently met for the same day as the Initial hearing on the Verified Petition to terminate her parental rights. She failed to appear at the Initial hearing as it was her wedding day. On her wedding night she was allegedly battered by her new husband. Her new husband was subsequently arrested for the battery.

29. The Court finds that [M]other's supervised visitation with the [C]hildren had been inconsistent, distressed by [M]other's volatile personality and disruptive of the [C]hildren's emotional well-being.

30. On February 7, 2011, a Permanency Review hearing was held. Mother had received notice of the hearing but failed to appear. . . .

* * *

32. Throughout the course of the CHINS proceedings, the [C]hildren continue to make progress behaviorally and academically while placed with the foster parent. [G.B.] and [K.B.] were released from residential placement and placed with the other children. They have continued to do well in the foster placement. All of [the Children] have bonded with the foster parent and have thrived in their placement with him. The foster parent is willing to adopt the [C]hildren in the event that parental rights are terminated.

* * *

CONCLUSIONS OF LAW

* * *

3. The [C]hildren have been removed from the home more than fifteen (15) out of the last twenty-two (22) months.

4. The conditions that resulted in the [C]hildren's removal have not been remedied, and are unlikely to be remedied. A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children. . . . Both parents admitted that they were incarcerated at the time of the [C]hildren's removal and that the recurrence of domestic

5

violence jeopardizes the [C]hildren who were previously placed in extended foster care following their adjudications of CHINS. . . .

Additionally, [M]other was allegedly battered by her current husband on her wedding night which coincided with the Initial hearing in this matter. Mother has a significant history of not only domestic violence in her relationships but of substance abuse. Her historic pattern of violent and abusive relationships was evident throughout the course of the CHINS proceedings up until the day of the final termination hearing. . . . Once [Mother] was released from prison, she failed to comply with Court ordered services, repeatedly refusing drug screens and failing to consistently attend counseling and co-parenting sessions. She continues to make poor choices that would endanger the [C]hildren if they were returned to her care and is again in a marriage relationship which would expose the [C]hildren to domestic violence. The [C]hildren require stability and structure to develop socially, mentally, physically and emotionally. They need to be in a permanent placement with stability in order to alleviate their mental health issues. . . .

5. The continuation of the parent-child relationship poses a threat to the well-being of the [C]hildren. The Court need not wait until [M]other's deficient lifestyle irreversibly influences her children's physical, mental and social growth, or for the [C]hildren to be otherwise permanently impaired before terminating the parent-child relationship. . . . Mother's history of living with men who are violent toward her poses a threat to the [C]hildren if returned to her care. Despite efforts by IDCS to provide counseling to assist her in gaining an understanding as to the impact her poor choices may have on the [C]hildren, [M]other remains unchanged in her inability to foresee the potential impact that these unhealthy relationships will have on her children.

6. Termination is in the best interest of the [C]hildren. The [C]hildren's need for stability and permanency at such young ages is paramount. . . . The [C]hildren have been in and out of foster care for most of their lives. The [C]hildren need permanency.

7. IDCS has a satisfactory plan for the care and treatment of the [C]hildren. The plan of adoption is in the best interests of the [C]hildren. . . . The [C]hildren have made positive progress since being placed in a permanent and stable setting with their foster father. . . .
* * *

Appellant's Appendix at 37-43.

## Discussion and Decision

6

### I. Standard of Review

In reviewing termination of parental rights, we do not reweigh the evidence or judge the credibility of witnesses. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). We consider only the evidence and reasonable inferences drawn therefrom favorable to the trial court's judgment. Id. In reviewing a termination of parental rights, when the trial court has entered findings of fact, as it did here, we apply a two-tiered standard of review. In re J.W., 779 N.E.2d 954, 959 (Ind. Ct. App. 2002), trans. denied. First, we examine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. Id. We will only set aside the findings and judgment if they are clearly erroneous. Id. Findings are clearly erroneous when no facts or inferences drawn therefrom support them. Id. A judgment is clearly erroneous when reviewing the record leaves us with a firm conviction that a mistake has been made. Id. When such findings are entered by the trial court sua sponte, the specific findings control only as to the issues they cover, and a general judgment standard applies to any issue upon which the court has not specifically found. Id. (citation omitted).

### II. The Termination of Mother's Parental Rights

Indiana Code section 31-35-2-4 provides requirements for a petition to terminate a parent-child relationship, including:

> (b) The petition must meet the following requirements:
> * * *
> (2) The petition must allege:
>     (A) that one (1) of the following is true:
>         (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

7

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

Mother contends the facts do not support the termination of her parental rights because "she was not given an adequate opportunity after she was released from incarceration to remedy the conditions that resulted in removal of the [C]hildren from her care." Brief of Appellant at 11. Initially, we note that Mother does not cite to any legal authority in support of her implied contention that a trial court must give a parent a certain level of opportunity to remedy the conditions leading to a child's removal before the parent's parental rights can be terminated. See Ind. Appellate Rule 46(A)(8)(a) ("The argument [section of an appellant's brief] must contain the contentions of the appellant on the issues

8

presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]").

Nevertheless, we can take Mother's argument into consideration in evaluating whether the trial court's findings of fact or conclusions are clearly erroneous.[2] The record shows Mother has had several previous encounters with DCS. In 1995, one of Mother's older children who is not involved in this proceeding was adjudicated as a CHINS due to Mother's problems with substance abuse. In 2000, Z.B. and G.B. were adjudicated as CHINS because G.B. was born cocaine positive and Mother was admittedly addicted to illegal drugs and had a substance abuse problem. Again in 2006, all of Mother's children were adjudicated as CHINS. After the last removal of the Children from Mother's care, the Children were only reunited with Mother for six to eight months before this proceeding commenced and they were once again removed.

Following Mother's incarceration, the trial court ordered her to submit to random drug screens, complete a substance abuse assessment and follow all recommendations, participate in individual counseling, participate in couples' counseling with Father, and remain in consistent contact with the family case manager. The record shows Mother did not fulfill these obligations. Although she initially cooperated and made some progress, she repeatedly canceled appointments or failed to show up. Despite her apparent view that she completed substance abuse counseling while incarcerated and thus did not need DCS's services, she has

---

[2] Because Mother's only argument involves the trial court's finding that it is unlikely the conditions leading to the Children's removal will be remedied, we focus our discussion on this portion of Indiana Code section 31-35-2-4(b)(2). After reviewing the record, the other requirements of that statute are also supported by sufficient evidence.

a long history of substance abuse problems and recurring domestic violence issues, neither of which create a suitable and healthy environment for children. She was not in a position to determine which rehabilitative services were necessary and which were not.

The record also reveals Mother's irresponsible actions and resulting repeated removal of the Children from her care were having a detrimental effect; G.B. and K.B. were evaluated and found to have "extensive mental health issues, including a history of anger outbursts, violent behavior, aggressiveness, and anxiety," and "[b]oth children have been treated with medication in the past, and both have recently participated in residential treatment." Appellant's App. at 171. As we have previously stated, "[t]he trial court need not wait until a child is irreversibly harmed such that his physical, mental, and social development are permanently impaired before terminating the parent-child relationship." In re M.S., 898 N.E.2d 307, 311 (Ind. Ct. App. 2008) (citation omitted). Mother argues she was not given enough time to remedy the problems causing the removal of her Children. Based upon her efforts during the time she was given to participate in services and remedy the conditions leading to removal, we conclude it was not clearly erroneous for the trial court to conclude the reasons for removal were unlikely to be remedied.

## Conclusion

The trial court's findings of fact and conclusions of law were not clearly erroneous, and we therefore affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.

10